## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

ROSEMARIE A.,

                Claimant,

       v.

LELAND DUDEK,
Acting Commissioner of Social Security,

                Respondent.

No. 22 C 4668

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Rosemarie A.[1] ("Claimant" or "Plaintiff") appeals the final decision of Respondent Martin O'Malley,[2] Commissioner of the Social Security Administration ("Commissioner"), denying her application for a period of disability and disability insurance benefits. The parties consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment, pursuant to 28 U.S.C. § 636(c). [ECF No. 7]. After reviewing the record and the parties' arguments, Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 14] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 19] is granted.

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using her full first name and the first initial of the last name.

[2] Leland Dudek was appointed as the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, he automatically is substituted as the named defendant in this case.

## BACKGROUND

### I.     Procedural History

On February 9, 2020, Claimant filed an application for a period of disability and disability insurance benefits. (R.13). Claimant alleged a disability beginning September 1, 2019. (R.13). The application was denied initially and on reconsideration after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R.13). A telephone hearing was held on September 30, 2021, at which Claimant was represented by an attorney. (R.13). A vocational expert also testified during the hearing. (R.13). The ALJ issued a decision on October 26, 2021, finding Claimant not disabled under the Social Security Act denying benefits. (R.13-25). The Social Security Administration Appeals Council denied Claimant's request for review, leaving the ALJ's decision as the final decision of the Commissioner. (R.1-6). Claimant filed this lawsuit seeking judicial review of the Commissioner's decision, and this Court has jurisdiction pursuant to 42 U.S.C. § 405(g). *See Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009).

### II.    The ALJ's Decision

Under the Social Security Act, disability is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). The regulations prescribe a five-part, sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Commissioner must determine whether: (1) the claimant has performed any

substantial gainful activity during the period for which she claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairments or combination of impairments meet or equal any listed impairment; (4) the claimant retains the residual functional capacity ("RFC") to perform any past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. *Id.*; *see Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). The claimant bears the burden of proof at steps one through four, and the burden shifts to the Commissioner at step five. *Gedatus v. Saul,* 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi,* 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000).

Applying the five-part test in this case, the ALJ found at step one that Claimant had not engaged in any substantial gainful activity since September 1, 2019, the alleged onset date. (R.15). At step two, the ALJ found Claimant had the following severe impairments: obesity, lumbar degenerative disk disease, with stenosis and radiculopathy. (R.15). The ALJ also found Claimant has a medically determinable impairment of depression. (R.16-17). At step three, the ALJ found that Claimant did not have any impairment or combination of impairments that met or equaled any of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 416.920(d), 416.925, and 416.926. (R.17-18). With respect to Claimant's mental

impairments, the ALJ undertook the paragraph B analysis[3] and determined that Claimant had mild limitations in understanding, remembering or applying information, interacting with others, in concentrating, persisting or maintaining pace, and in adapting and managing herself. (R.16-17). Before step four, the ALJ determined:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). Function by function, the claimant is able to lift and carry up to 10 pounds occasionally and less than 10 pounds frequently. The claimant can occasionally use her bilateral lower extremities/feet for pushing and pulling or operating foot controls. The claimant can frequently climb stairs and ramps, but only occasionally stoop, crawl, crouch, kneel and climb ladders, ropes and scaffolds. The claimant requires the option to sit and stand every 30 min.

(R.18). At step four, the ALJ found that Claimant was capable of performing her past relevant work as a surgery scheduler. (R.23). Alternatively, at step five, the ALJ found there were other jobs in the national economy Claimant could perform based on the testimony of the vocational expert who opined that Claimant could perform the jobs of order clerk, document preparer, and polisher. (R.23-24). Based on these findings, the ALJ denied Claimant's applications for benefits and found her not

---

[3] To determine whether a mental impairment meets or equals listing level severity at Step Three of the sequential analysis, a claimant must prove she meets the severity criteria of either paragraph B or C. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06. To satisfy the paragraph B criteria, a claimant must demonstrate an "[e]xtreme limitation of one, or marked limitation of two" of four areas: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting and managing oneself. *Id.* To evaluate these four areas, ALJs will investigate how an impairment interferes with a claimant's ability to function independently, appropriately, effectively, and on a sustained basis, as well as the quality and level of overall functional performance, any episodic limitations, the amount of supervision or assistance required, and the settings in which a claimant is able to function. 20 C.F.R. § 404. 1520a(c)(2).

disabled under the Social Security Act from September 1, 2019 through the date of the decision. (R.30).

## DISCUSSION

### I.  Standard of Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision, therefore, is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ applied the correct legal standard in reaching her decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is ... 'more than a mere scintilla.' ... It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Seventh Circuit has made clear that ALJs are "subject to only the most minimal of articulation requirements" and "need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for

every proposition or chain of reasoning." *Warnell v. O'Malley*, 97 F.4th 1050, 1053-54

(7th Cir. 2024) (citations omitted). More specifically, the Seventh Circuit stated:

> All we required is that ALJs provide an explanation for how the evidence
> leads to their conclusions that is "sufficient to allow us, as a reviewing
> court, to assess the validity of the agency's ultimate findings and afford
> [the appellant] meaningful judicial review." … At times, we have put
> this in the shorthand terms of saying an ALJ needs to provide a "logical
> bridge from the evidence to his conclusion."

*Id.* at 1054 (citations omitted). When conflicting evidence would allow reasonable

minds to differ, the responsibility for determining whether a claimant is disabled falls

upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th

Cir. 1990); *see also Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014) ("Where

conflicting evidence allows reasonable minds to differ as to whether a claimant is

entitled to benefits, the court must defer to the Commissioner's resolution of that

conflict.") (internal quotations and citation omitted). The court may not substitute its

judgment for that of the Commissioner by reevaluating facts, reweighing evidence,

resolving conflicts in evidence, or deciding questions of credibility. *See Skinner v.

Astrue*, 478 F.3d 836, 841 (7th Cir. 2007); *see also Elder v. Astrue*, 529 F.3d 408, 413

(7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable

minds could differ'" as long as "the decision is adequately supported") (citation

omitted).

## II.   Analysis

Claimant argues the ALJ's decision cannot stand in this case because: (1) the

ALJ failed to account for Claimant's mental limitations, considered in combination

with her severe physical impairments, in the RFC; and (2) the ALJ's evaluation of

Claimant's subjective symptoms was not supported by substantial evidence. *See* Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 14] ("Motion"). The Court will consider each of these arguments in turn.[4]

### A. The ALJ's decision not to address Claimant's mental impairments in the RFC is supported by substantial evidence.

Claimant argues the ALJ erred in not accommodating Claimant's depression in the RFC. Motion [ECF No. 14] at 7-12. Claimant says the ALJ erred in finding Claimant's limitations in the functional areas of interacting with others and concentrating, persisting, or maintaining pace were "neither marked nor extreme, but mild in nature" because "[t]he ALJ skipped over the option of 'moderate'" which Claimant says would have necessitated accommodations for her depression as a severe impairment in the RFC. [*Id.*] Claimant points to the opinion of her treating physician, Dr. Stoecker, who opined that Claimant's "pain and stress would constantly be severe enough to interfere with the attention and concentration needed

---

[4] The Court issued an order regarding the Social Security Administration's Emergency Message (EM) 24027, issued on June 22, 2024, which acknowledges that courts have questioned the continued viability of thirteen specific occupations in the Dictionary of Occupational Titles, including one of the occupations (Document Preparer, DOT # 249.587-018) relied by the vocational expert in this case. [ECF No 26]. The Court ordered the parties to file a status report on how they propose to address EM-24027 in this case. [*Id.*] Claimant argues the Commissioner erred by failing to provide substantial evidence for the Step Five finding in the alternative. Plaintiff's Status Update [ECF No. 30]. Claimant fails to explain why any such error is not harmless, however, given the ALJ's finding that Claimant could perform her past work as a surgery scheduler, the alternative nature of the ALJ's Step Five finding regarding other jobs Claimant could perform in the national economy, and the fact that the vocational expert also identified two other jobs in the national economy that Claimant could perform.

to perform simple work tasks." Motion [ECF No. 14] at 9. Claimant says the ALJ ignored "the interplay between pain and mental functioning" in rejecting Dr. Stoecker's opinion. [*Id.*] at 10.

The Court disagrees. As Claimant acknowledges, "[w]hether an individual's mental impairment is severe or non-severe is not particularly pertinent"; rather, the question is whether the ALJ considered the combined impact of Claimant's depression and her severe physical impairments on her ability to perform full-time work activities. Motion [ECF No. 14] at 10. Moreover, courts "do not review medical opinions independently but rather review the ALJ's weighing of those opinions for substantial evidence, and only overturn that weighing if no reasonable mind could accept the ALJ's conclusion." *Grotts v. Kijakazi*, 27 F.4th 1273, 1278 (7th Cir. 2022).

At Step Four, the ALJ expressly considered record evidence regarding Claimant's depression. The ALJ discussed Dr. Stoecker's opinion finding Claimant's physical "impairments cause severe pain that would constantly interfere with her attention and concentration needed to perform simple work tasks, and that she would constantly experience stress severe enough to interfere with her attention and concentration needed to perform simple work tasks." (R.21). The ALJ then provided an explanation for why she found Dr. Stoecker's opinion not to be persuasive:

> While the evidence supports the claimant suffers from pain, there is no evidence that it constantly interferes with her ability to pay attention and concentrate necessary to perform even simple work tasks. Such restrictions are contrary to her ability to engage in daily tasks such as assisting with some household chores, operating a vehicle, and pay attention and persist with tasks during routine examinations (Exhibits 2F, 3F, 5F, 9F, and 15F). . . Additionally, based on the results of these examinations, there is no evidence to support the claimant needs to lay

8

down for 6 hours a day, and such a limitation also contrasts her daily functioning and being able to care for her children, monitor their schoolwork while they attended school at home and even walk her dogs. Moreover, the undersigned notes that in 2020, Dr. Stoecker had only two medical tele-visits with the claimant; the last time she examined the claimant in person was in July 2019 and, at the time, her physical examination was within normal limits (Exhibit 11F). Based on the numerous inconsistencies outlined above, the undersigned finds this opinion is not persuasive.

(R.22). Claimant says the ALJ improperly relied on Claimant's ability to engage in daily activities to conclude she was able to sustain full time competitive work. Motion [ECF No. 14] at 11. The Court disagrees. The ALJ contrasted Claimant's ability to engage in certain activities with Dr. Stoecker's opinion that Claimant experienced constant stress that interferes with the attention and concentration needed to perform simple tasks or the frequency with which Claimant needs to lay down during day. The ALJ did not improperly conflate Claimant's ability to perform these daily activities with her ability to perform full-time work. Rather, the ALJ concluded Claimant's ability to engage in such activities was contrary to the extreme functional limitations found in Dr. Stoecker's opinion.

The ALJ also discounted the persuasiveness of Dr. Stoecker's opinion based on inconsistencies between Dr. Stoecker's treatment records showing Claimant's physical examination was within normal limits at her last in-person visit, as well as the fact that Dr. Stoecker had only two telehealth visits with Claimant during 2020. (R.22). Claimant interprets this to be a general criticism of telehealth visits by the ALJ and asserts such a view is inconsistent with the fact that the ALJ's own evaluation of Claimant occurred during a telephonic hearing. Motion [ECF No. 14] at

10-11. The Court, however, understands the ALJ's criticism differently, viewing it as focused on the fact that Dr. Stoecker only had two appointments with Claimant in all of 2020 and that her last in-person examination in mid-2019 showed normal results. While Claimant points to her long-standing treating relationship with Dr. Stoecker, Claimant does not dispute the ALJ's criticism that Dr. Stoecker's more extreme opinion of Claimant's functioning was based on a limited number of interactions during the relevant period. Based on this record, the Court will not second guess the ALJ's conclusion that Dr. Stoecker's opinion that Claimant had extreme functional limitations precluding any ability to work was inconsistent with record evidence and Claimant's daily functioning. (R.29).

The ALJ also found persuasive the opinion of the state agency psychological consultant, who, like the ALJ, assessed Claimant as having mild limitations in the Paragraph B functional areas due to her depression:

> The record also contains the opinion of another State agency consultant, David Voss, PhD, who reviewed the evidence in December 2020 (Exhibit 3A, page 9). Dr. Voss opined the claimant had mild limitations in all B criteria categories (Exhibit 3A, page 9). Dr. Voss based on his opinion on the evidence that documents a mood disorder that causes depression secondary to her back impairment (Exhibit 3A, page 9). The evidence supports the claimant's back impairment causes only mild limitations in the B criteria categories as she has still been able to engage practitioners and understand their medical instructions, has sustained good relationships with family and friends who help her, and is able to manage her stressors while still caring for herself and working towards personal and treatment goals (Exhibits 2F page 23, 8F, page 13, 9F, page 7, and 11F, pages 11, and 24 to 25). Based on the evidence, I find Dr. Voss' opinion is persuasive as it is consistent with the evidence in the longitudinal record and her functioning.

(R.23). Claimant argues the ALJ made an "incomprehensible assertion" in assessing Dr. Voss's opinion by considering "only the effects of Plaintiff's physical impairments, as if the mood disorder and depression identified by the consultant do not event exist" and therefore the ALJ "ignored Plaintiff's mental impairments entirely, both individually and in combination with Plaintiff's physical impairments. . ." Motion [ECF No. 14] at 9.

Again, the Court disagrees with Claimant's characterization of the ALJ's analysis and opinion. The ALJ noted Dr. Voss found only mild limitations in the Paragraph B criteria and that his opinion was "based on . . . the evidence that documents a mood disorder that causes depression secondary to her back impairment." (R.23). The Court understands the ALJ's description to mean Dr. Voss found Claimant's depression, stemming from her physical impairments, caused mild limitations in the four mental functioning areas. Moreover, Dr. Voss's opinion states he considered Dr. Stoecker's treatment of Claimant for depression, as well as other medical records referencing Claimant's depression symptoms. (R.71-87 (Exhibit 3A)). Based on a review of these mental health records, Dr. Voss concluded "[t]he available medical evidence documents a mood disorder, secondary to the claimant's medical problems" and found "[i]t is reasonable for this claimant to experience some depression, secondary to her physical issues. However, based on the preponderance of evidence in file, limitations in functioning appear related to the claimant's medical/physical condition and any mental impairment would impose no more than mild limitation in functioning and is considered non-severe." (R.79). Thus, there is no

support for Claimant's assertion that the ALJ or Dr. Voss considered only Claimant's physical impairments or that they ignored the effects of Claimant's depression.

Nor does Claimant address the ALJ's conclusion that the medical opinion evidence regarding the extent of the effects of Claimant's physical impairments, and correspondingly, the resulting impact on Claimant's mental functioning, was not persuasive. For example, the ALJ considered the opinion of another of Claimant's treating physicians, Dr. McNally, who "opined the claimant was unable to sit, stand or walk for extended periods of time" but the ALJ concluded "the evidence does not necessarily support this opinion" because "although the claimant has pain, treatment records illustrate she has been able to ambulate freely with normal gait, appears to sit comfortably during examinations and can stand without significant problems during exams. . .Thus, the evidence illustrates a capacity to sit, stand and walk for varying periods." (R.21 (finding "Dr. McNally's opinion is vague as he does not outline the time period for each movement")).

The ALJ also explained why she found aspects of Dr. Stoecker's opinion regarding the extent of Claimant's physical limitations to be unsupported. (R.22 ("The standing and walking, exertional and postural limitations in terms of distance, surface to walk on and time are also not supported by evidence of musculoskeletal examinations that note unremarkable gait, no balance problems, no sensory deficits and full 5/5 strength in the lower extremities . . . Additionally, based on the results of these examinations, there is no evidence to support the claimant needs to lay down for 6 hours a day, and such a limitation also contrasts her daily functioning and being

able to care for her children, monitor their schoolwork while they attended school at home and even walk her dogs.") (noting "the last time [Dr. Stoecker] examined the claimant in person was in July 2019 and, at the time, her physical examination was within normal limits") (internal citations omitted)). In addition, the ALJ explained why she found "somewhat persuasive" the opinions of state agency medical consultants Dr. James Hinchen and Dr. Frank Mikell. The ALJ explained "[t]hese consultants based on their opinions on evidence of chronic pain caused by radiculopathy and stenosis, but also the results of musculoskeletal and neurological examinations that highlight [Claimant] ambulate (*sic*) freely with normal gait." (R.22-23). The ALJ concluded, however, Dr. Hinchen and Dr. Mikell "did not properly assess how [Claimant's] pain has reduced her exertional capacity to the sedentary exertional level" but "they accurately assessed her ability to engage in postural movements based on the results of routine musculoskeletal examinations and her 5/5 in the lower extremities, ability to ambulate with unremarkable gait, and intact sensation, as well as her daily functioning." (R.22-23).

In sum, the Court understands the basis for the ALJ's conclusion that Claimant's mental impairment of depression imposed mild limitations on her ability to engage in the four functional areas, including because the ALJ discounted the evidence about the extent of Claimant's physical limitations. Claimant essentially asks the Court to reweigh the evidence considered by the ALJ in analyzing Claimant's mental impairment, but the Court "will not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute our judgment for the ALJ's

determination so long as substantial evidence supports it." *Warnell*, 97 F.4th at 1052-53. The ALJ explained the basis for her conclusions and the Court was able to follow the ALJ's reasoning which satisfies the articulation requirements. *Id.*, 97 F.4th at 1053.

Lastly, Claimant suggests that even if her depression causes only mild limitations in the four functional areas, the ALJ was nevertheless required to consider how Claimant's mental impairment, combined with her severe physical impairments, impacted her functional abilities to work in the RFC. Motion [ECF No. 14] at 10. The RFC is the "assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996); *Mandrell v. Kijakazi,* 25 F.4th 514, 516 (7th Cir. 2022); *Jeske v. Saul,* 955 F.3d 583, 593 (7th Cir. 2020). The RFC is a determination of the maximum work-related activities a claimant can perform despite his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000-1001 (7th Cir. 2004). Social Security regulations require that the RFC assessment is "based on all the relevant evidence in the record." *Id.* at 1001, citing 20 C.F.R § 404.1545(a)(1).

As discussed above, at Steps Two and Three, the ALJ found Claimant had a non-severe impairment of depression, addressed the record evidence, and concluded Claimant had mild limitations in all four functional areas:

> The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. The

claimant has not reported any memory deficits or problems understanding, processing and applying information when she was in school and/or was working. To that end, her depression does not affect her ability to understand and apply information, as is evidenced by her ability to engage in various daily tasks/activities. Furthermore, she appears able to generally follow and apply medical advice from practitioners concerning how to best manage her symptoms. Thus, based on the aforementioned evidence, she is able to understand information, remember it, as is evidence by her ability to follow instructions, answer and ask questions, solve problems, use reasoning, and use judgment with minor modifications or adjustments.

The next functional area is interacting with others. In this area, the claimant has mild limitation. The claimant has not reported any problems interacting and sustaining relationships with others, as she appears to have good relationships with her kids and husband, as well as gets along appropriately with medical practitioners (Exhibits 2F, 3F, 5F, 8F, 9F, 11F, and 15F). The undersigned notes although the claimant's depression can cause some challenges in social functioning, her ability to deal with others at home, while managing herself and personal responsibilities and in other scenarios indicates her difficulties interacting with others is neither marked nor extreme, but mild in nature.

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The claimant has not reported any difficulties sustaining concentration and attention, and no such limitations have been noted during medical appointments/examinations as she has been able to engage practitioners, answer questions and follow directions without any noticeable difficulties (Exhibits 2F, 3F, 5F, 8F, 9F, 11F, and 15F). However, the claimant reported to Dr. Stoecker during an appointment in July 2019, that she was a bit overwhelmed at home and was having trouble managing her diabetes medications, which illustrates some minor problems multi-tasking, managing priorities and persisting (Exhibit 11F, page 25). Nevertheless, with medication management, she has been better able to manage her depression and other responsibilities. The undersigned notes that although the claimant is sensitive to depression, her ability to concentrate/complete tasks/maintain pace during examinations, manage herself and personal responsibilities, and respond appropriately to questions suggests her limitation in this functional category is neither marked nor extreme, but mild in nature.

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant has expressed some difficulty at times managing competing priorities in her schedule and has minor problems processing stressors (Exhibit 11F, page 25). However, she has still been able to regulate emotions, control behavior, and maintain well-being by adapting to changes, setting realistic goals, making plans, maintaining personal hygiene, and being aware of and able to avoid hazards (Exhibits 2F, 3F, 5F, 8F, 9F, 11F, and 15F). Further, she generally maintains the ability to meet personal responsibilities without modifications or adjustment necessitated by psychologically based symptoms or impairments. Given the degree of independence, appropriateness, effectiveness, and sustainability of activities, any difficulties are no more than mild in nature.

(R.16-17). The ALJ also noted Claimant's depression "responded well to medication management in the form Duloxetine, which was prescribed by her primary care practitioner, Ashley Stoecker" and the results of "routine psychiatric examinations highlight she is stable and oriented to time, place and person." (R.16). Claimant does not address the ALJ's finding that her depression responded well to medication.

"[T]here is no requirement that restrictions from non-severe impairments must be included in the RFC assessment." *Lionel L. v. King*, 2025 WL 446150, at *5 (N.D. Ill. Feb. 10, 2025) (citing *Felts v. Saul*, 797 F. App'x 266, 268-70 (7th Cir. 2019)). Nevertheless, the Court acknowledges that despite the ALJ's conclusion that Claimant experienced only mild limitations in all four areas of functioning, the ALJ was still required to address why she did not include any mental limitations in the RFC. *See*, *e.g.*, *Alonzo S. v. O'Malley*, 2024 WL 4818732, at *2–3 (N.D. Ill. Nov. 18, 2024) (Gilbert, J.) ("The regulations provide that when formulating the RFC finding, the ALJ must account for functional limitations caused by non-severe impairments *when those impairments affect the claimant's work functionality*.") (remanding where

"the ALJ did not explain why he concluded, if he indeed did so conclude, that Claimant's mild limitation in concentration, persistence, and pace did not affect his work functionality such that the ALJ did not need to include any corresponding restrictions in the RFC.").

Here, at Step Four the ALJ addressed, as discussed above, why she found unpersuasive Dr. Stoecker's opinion finding substantial functional limitations. The ALJ also explained why she found persuasive Dr. Voss's opinion finding only mild limitations. The ALJ concluded "based on the substantial weight of the objective medical course of treatment and level of daily activity" Claimant "retains the residual functional capacity for the range of sedentary exertional work" identified in the RFC. (R.23).

While the ALJ could have been clearer in explaining specifically why no mental restrictions were included in the RFC despite the finding of mild limitations from Claimant's depression, the Court can discern the ALJ's rationale from her overall opinion. The Seventh Circuit has explained all that is required is that "ALJs provide an explanation for how the evidence leads to their conclusions that is sufficient to allow [the reviewing court] to assess the validity of the agency's ultimate findings and afford the appellant meaningful judicial review." *Warnell*, 97 F.4th at 1054 (quoting *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014)). In addition, although the ALJ's more fulsome analysis of Claimant's mild functional limitations was conducted at an earlier step, the Court must read the ALJ's decision as a whole. *See Zellweger v. Saul*, 984 F.3d 1251, 1255 (7th Cir. 2021) (decisions must be read holistically; an ALJ's

reasoning and citations in one portion of her decision may support conclusions in another portion of the decision). In finding mild limitations applying the Paragraph B criteria at Steps Two and Three, the ALJ identified evidence of daily activities Claimant remained capable of doing, the absence of any descriptions of more substantial functional limitations by Claimant's providers in treatment notes, and successful medication management of Claimant's depression. At Step Four, the ALJ identified inconsistencies between Dr. Stoecker's opinion finding substantial functional limitations and Claimant's ability to engage in daily activities. *See Bradley W. v. Comm'r of Soc. Sec.*, 2024 WL 5330659, at *3–4 (C.D. Ill. Sept. 25, 2024) (ALJ's "analysis at Steps Two and Four, taken together, are the ALJ's articulation of: 1) how he made the determination he did as to [claimant's] RFC; and 2) why he ultimately omitted mental limitations from his RFC finding. In other words, the ALJ provided the requisite logical bridge from the evidence to his conclusions."). Reading the ALJ's opinion as a whole, the ALJ's analysis at both steps comprises the ALJ's articulation of the determination of Claimant's RFC as well as why the ALJ omitted mental limitations from the RFC. In other words, the ALJ provided the requisite logical bridge from the evidence to her conclusions. *Warnell*, 97 F.4th at 1054.

Finally, "[i]t is not enough to criticize the ALJ's decision about [her] functional capacity to work. [Claimant] must point to evidence compelling the conclusion that the adverse disability decision lacks substantial support in the record." *See Morales v. O'Malley*, 103 F.4th 469, 470 (7th Cir. 2024). Claimant does not identify any specific mental accommodations that she contends should have been encompassed in the

RFC. In sum, this is not a case where the ALJ failed to "explicitly rate the degree of Claimant's functional limitation in each of the four paragraph B categories," *see Kathy A. v. Kijakazi*, 2022 WL 2758001, at *3–5 (N.D. Ill. July 14, 2022), nor did the RFC portion of the ALJ's analysis fail to "include any discussion of the non-severe impairments." *Brandon D. v. O'Malley*, 2024 WL 4449965, at *3–4 (N.D. Ill. Oct. 9, 2024). In short, Claimant's argument is an invitation to reweigh evidence that was expressly considered by the ALJ rather than a circumstance where the Court is unable to discern the ALJ's reasoning for not including mental limitations in the RFC. For all these reasons, the Court concludes the ALJ's decision not to include mental accommodations in the RFC is supported by substantial evidence.

### B. The ALJ's opinion as to Claimant's subjective symptoms is supported by substantial evidence.

Claimant argues the ALJ improperly discounted the limiting effects of her subjective symptoms, asserting the ALJ "telegraphed an obvious skepticism regarding Plaintiff's claims" and "peppered her iteration of the medical facts with editorial comments that cast doubt upon the findings." Motion [ECF No. 14] at 12 and 13. *See generally* Motion [ECF No. 14] at 12-15. More specifically, Claimant says ALJ improperly conflated Claimant's ability to engage in certain daily activities, including caring for her children, with the ability to perform full time work, and that the ALJ unfairly criticized Claimant for not undergoing recommended surgery. *Id.* Finally, Claimant argues the ALJ failed to consider Claimant's obesity in combination with her other impairments.

When assessing a claimant's subjective symptom allegations, an ALJ considers several factors, including the objective medical evidence, the claimant's daily activities, his level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5-8. "As long as an ALJ gives specific reasons supported by the record, [the Court] will not overturn a credibility determination unless it is patently wrong." *Grotts v. Kijakazi*, 27 F.4th 1273, 1279 (7th Cir. 2022). "Patently wrong" means that the decision lacks any explanation or support. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017). Not all the ALJ's reasons must be valid in a subjective symptom analysis, "as long as enough of them are." *Halsell v. Astrue*, 357 F. App'x 717, 722 (7th Cir. 2009) (emphasis in original).

Here, the ALJ considered Claimant's testimony that she can sit for only 10 to 15 minutes, stand for only 10 minutes, and can only walk half a block. (R.19). The ALJ noted Claimant testified that she was only able to move a fruit basket while sitting and could only lift her baby while standing, and that her back pain was so intense that when it occurs she must lay on the floor and at times cannot walk. (*Id.*) The ALJ also described an incident in early May 2020 where Claimant experienced extreme pain after gardening. (R.20). The ALJ contrasted Claimant's testimony with evidence regarding Claimant's ability to engage in certain activities, including caring for her personal needs, caring for her children, assisting with some household chores, walking her dogs for short distances and taking her children to the park with accompanied by another person. (R.19)

The ALJ also discussed medical record evidence that the ALJ found to be inconsistent with Claimant's descriptions of the extent of her symptoms and pain. The ALJ identified normal findings on physical examinations in Claimant's treatment records, including by Dr. Novoseletsky in November 2019, who found Claimant's gait was normal and she had normal strength in her lower extremities, but that her range of motion was limited due to pain on extension; on follow up by Dr. Novoseletsky in January 2020, where the examination reported normal gait, normal coordination, and full strength and intact sensation in the lumbar region despite limited range of motion and tenderness; and by Dr. McNally in April 2020, who noted some difficulty in getting on the examination table, but that other aspects of the examination were normal including her gait and walk. (R.19-20). The ALJ noted that these examinations did not uncover any debilitating functional limitations and that Claimant was still able to care for herself and her children on a daily basis, pointing to an April 2020 treatment note from Dr. McNally where Claimant described her daily responsibilities as walking her dogs, caring for her children and online learning. (R.20). Examinations by Dr. Novoseletsky and Dr. Stoecker in late 2020 also reflected normal strength, sensation and stability. (R.20-21).

At a follow up appointment with Dr. Novoseletsky in April 2021, the ALJ acknowledged Claimant continued to complain of back pain that would "come and go," while also noting the examination again showed normal gait and 5 out of 5 strength in lower extremities, with some tenderness and loss of range of motion in the lumbar spine. (R.21). The ALJ observed Claimant "still remained able to

ambulate and move around and would have her pain adequately managed." (R.21). The ALJ concluded more extreme functional limitations as to "standing and walking, exertional and postural limitations in terms of distance, surface to walk on and time are also not supported by evidence of musculoskeletal examinations that note unremarkable gait, no balance problems, no sensory deficits and full 5/5 strength in the lower extremities." (R.22).

In addition, as discussed above, the ALJ explained why she did not find persuasive opinions as to Claimant's severe functional limitations that were offered by Dr. McNally and Dr. Stoecker, as well as why the ALJ instead relied, in part, on the findings of the state agency consultants regarding Claimant's functional abilities. (R. 21-23). To that end, the ALJ explained the state agency consultants "did not properly assess how her pain has reduced her exertional capacity to the sedentary exertional level" and the ALJ rejected their finding that Claimant could perform light work, instead crafting an RFC that limited Claimant to sedentary work and including an additional restriction that Claimant "requires the option to sit and stand every 30 min." (R.18 and R.22-23). *See Tutwiler v. Kijakazi*, 87 F.4th 853, 859-60 (7th Cir. 2023) (finding the ALJ's departure from the RFC recommended by the state agency physicians showed "careful consideration ... based on [the ALJ's] independent review of the full evidentiary record.").

Based on this record, the Court cannot reasonably say the ALJ's consideration of Claimant's symptoms lacks any explanation or support. The ALJ relied on treatment records showing normal examinations without reports of substantial

functional limitations, Claimant's ability to engage in daily activities, and the opinions of the state agency consultants in finding Claimant's alleged symptoms were not as disabling as she claimed. With multiple citations to the record, the ALJ discussed and analyzed Claimant's alleged symptoms and reasonably determined that some of her alleged symptoms were not fully corroborated by the record.[5] Claimant's burden on review of the ALJ's decision is a heavy one, and she has to show the ALJ's assessment of her symptoms was "patently wrong" which means that the decision "lacks any explanation or support." *Hess v. O'Malley*, 92 F.4th 671, 679 (7th Cir. 2024); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014). In the Court's view, Claimant falls short of that mark here. Although Claimant disagrees with the ALJ's assessment and wants the evidence to be weighed differently, she has not shown the ALJ's evaluation of her symptoms was not supported by the evidence. *See Horr v. Berryhill*, 743 F. App'x 16, 19-20 (7th Cir. 2018). The Court does not find any reversible error in the ALJ's assessment or how she evaluated Claimant's pain, or her daily activities, treatment history, or obesity.

The Court acknowledges Claimant's argument that the ALJ improperly assessed and considered her daily activities in arriving at the RFC. As previously

---

[5] *See Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and [the claimant's] daily activities did not corroborate his subjective symptoms.").

discussed, the Court disagrees and finds that the ALJ did not equate Claimant's daily activities with an ability to work full time. Rather, the ALJ reasonably concluded that Claimant's asserted impairments were not as severe and limiting as she alleged. *See Jeske*, 955 F.3d at 593 ("... the ALJ considered [plaintiff's] daily-living activities as one factor – among others – indicating that [plaintiff's] descriptions of her mental-functioning limitations were not fully credible. This use of daily-living activities, to assess credibility and symptoms, was not improper."); *Darryl S. v. Kijakazi*, 2023 WL 3169617, at *4 (N.D. Ill. Apr. 28, 2023).

As to the ALJ's questions at the hearing about why Claimant had not pursued fusion surgery, it is not reversible error for an ALJ to inquire why an individual with allegedly extreme functional limitations did not seek or require more aggressive interventions to manage her condition. As the Commissioner notes, the ALJ was obligated to inquire as to why Claimant did not pursue treatment options before drawing credibility inferences from those decisions. Defendant's Memorandum in Support of Motion for Summary Judgment [ECF No. 20] ("Response") at 6-7. Moreover, although the ALJ identified treatment recommendations that Claimant had not pursued (including Dr. Novoseletsky's recommendations of a sacral lateral branch radiofrequency neurotomy and a spinal cord stimulator, as well as Dr. McNally's recommendation of a lumbar fusion, (R.19-21)), Claimant does not show the ALJ's decision was premised on Claimant's decision not to pursue these treatments.

Finally, Claimant argues "though [the ALJ] determined, at Step 2, that [Claimant's] obesity was a severe impairment, the ALJ barely gave it a moment's consideration in assessing the RFC." Motion [ECF No. 14] at 13. The ALJ did, however, consider Claimant's obesity at Step Four, stating:

> The claimant has also struggled with her weight, which was [*sic*] ranged between 218 and 230 pounds (Exhibits 2F, page 23, 11F, pages 17, and 24, and 15F, page 2). When the claimant's average weight and height of 5 feet, 9 inches are utilized to calculate her body mass index (hereinafter BMI), this figure is over 30 kg/m2 (Exhibit 2F, page 22). In an effort to lose weight, in July 2019, the claimant reported following the keto diet and indicated she was doing well (Exhibit 11F, page 20). Although the claimant's weight can cause some challenges with lifting and carrying and even engaging in some postural movements, as well as with exposure to environmental irritants, it does not cause debilitating functional limitations. To that end, as discussed above, she is able to utilize her upper and lower extremities, moves about as necessary, and ambulates despite her weight as needed to perform daily activities.

(R.21). Claimant contends the ALJ improperly "asserted that her obesity, in and of itself, does not cause debilitating functional limitations" and therefore "the ALJ failed to explain how she considered any 'added or accumulative effects' of [Claimant's] obesity on her ability to function physically and mentally within the context of a full-time work setting." [*Id.*] at 13-14. The Court disagrees. Immediately following the ALJ's extensive discussion of record evidence regarding Claimant's back impairment, after which the ALJ found Claimant "still remained able to ambulate and move around," the ALJ then addressed Claimant's obesity, noting "[c]laimant has also struggled with her weight," acknowledged Claimant's weight causes some challenges with lifting and carrying and engaging in some postural movements, but concluded "despite [Claimant's] weight" she is able to engage in activities, move about and

ambulate, and use her upper and lower extremities. (R.19-21). Thus, the ALJ considered the effect of Claimant's obesity in combination with her back impairment.

Moreover, Claimant does not identify what additional limitations she contends should have been added to the RFC to accommodate her obesity, nor does she identify any physician who imposed any functional limitations beyond that contained in the RFC related to her obesity. *See Shumaker v. Colvin*, 632 F. App'x 861, 867–68 (7th Cir. 2015) ("Shumaker does not identify any evidence in the record that suggests greater limitations from her obesity than those identified by the ALJ, and neither does she explain how her obesity exacerbated her underlying impairments. Thus, even if the ALJ had erred in considering how Shumaker's obesity affects her ability to work, that error would be harmless.") (citing *Prochaska v. Barnhart,* 454 F.3d 731, 736–37 (7th Cir. 2006) and *Skarbek v. Barnhart,* 390 F.3d 500, 504 (7th Cir. 2004)). Claimant says obesity can cause "fatigue that may affect the person's physical and mental ability to sustain work activity" and notes "[a]s already discussed, fatigue is a persistent problem for Claimant, and she must lie down frequently." Motion [ECF No. 14] at 14. But Claimant argues in her Motion that she needs to lie down frequently to alleviate her back pain, not because of fatigue stemming from her obesity. *See* Motion [ECF No. 14] at 1-2 (describing Claimant's testimony that she would "lie down on the floor to alleviate the pain" and instances where her back pain "becomes so intense that she just has to lie down on the floor"). Thus, Claimant does not meet her burden to show that the sedentary work, required option to sit and stand

every 30 minutes, and other exertional and postural limitations included in the RFC were insufficient to accommodate the effects of her obesity on her back impairment.[6]

The Court finds the ALJ reasonably determined that Claimant's alleged symptoms were not fully corroborated by the record and that is a reasonable conclusion for the ALJ to draw on this record. Even if this Court would have evaluated some of the evidence differently, the Court is not permitted to second guess the ALJ's conclusions or reweigh the evidence. *Grotts*, 27 F.4th at 1279 ("When [the plaintiff] criticizes the ALJ's analysis of her daily functioning, her good and bad days, and her pain, she is ... inviting us to reweigh the evidence."). In the Court's view, the ALJ recognized Claimant's pain symptoms throughout her decision, considered the effect of Claimant's obesity on her symptoms, and reasonably accommodated Claimant's symptoms by limiting her to a restricted range of sedentary work. (R.18). Accordingly, Claimant's challenge to the ALJ's assessment of her subjective symptoms is not persuasive under the applicable legal standards, and remand on this issue is not required.

---

[6] Claimant also says her size "could have made an impression" if the Court had conducted the hearing in person rather than by telephone, but the Court will not consider such speculation as evidence. *See* Motion [ECF No.14] at 14; *Jose J. V. v. Dudek*, 2025 WL 885714, at *5 (N.D. Ill. Mar. 21 2025) (rejecting speculative argument that "Plaintiff also contends that his size 'could have made an impression' had the ALJ seen him in person . . ." citing *Stewart v. Berryhill*, 731 F. Appx. 509, 510 (7th Cir. 2018) ("Unsubstantiated claims are of course, no substitute for evidence").

**CONCLUSION**

Accordingly, for all the reasons set forth above, Plaintiff's Memorandum in Support of Reversing or Remanding Commissioner's Decision [ECF No. 14] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 19] is granted

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: April 28, 2025